950 F.2d 797
 292 U.S.App.D.C. 388
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee
v.
Arltonio FENTY, a/k/a Artus, Appellant
 Nos. 88-3132, 90-3159.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 26, 1991.
 
 Before BRENNAN, Associate Justice, Retired,* WALD and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on an appeal from the United States District Court for the District of Columbia. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment from which these appeals have been taken be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 On June 14, 1988, Arltonio Fenty was convicted in the district court on five counts relating to a single episode of drug distribution: one count of possessing with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(iii), one count of using a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and three counts of possessing unregistered firearms, in violation of 5 D.C.Code § 6-2311(a). On August 18, 1988, Fenty was sentenced to 151 months on the possession count and five years, to run consecutively, on the federal firearms count, to be followed by two concurrent five-year terms of supervised release. In addition, he was sentenced to three terms of imprisonment of four to twelve months on the District firearms counts, to run concurrently with each other and with the federal sentences. Fenty filed an appeal on August 29, 1988, alleging, inter alia, ineffective assistance of counsel. On June 16, 1989, Fenty filed a motion in the district court to vacate his sentence, pursuant to 28 U.S.C. § 2255, based on ineffective assistance of counsel and at the same time moved in this court to stay the appeal pending disposition of the motion to vacate. This court granted the stay and on July 2, 1990, the district court, after a two-day evidentiary hearing, denied the motion to vacate. Hearing Transcript ("H.Tr.") II 96-109. Fenty appealed that denial and his two appeals were consolidated. Both appeals challenge Fenty's convictions and sentences on the single ground of ineffective assistance of counsel. We agree with the district court that, while Levin's representation of Fenty was "not a model of what we would expect our defense counsel to do," H.Tr. II 100, Fenty has failed to establish ineffective assistance of counsel warranting reversal.
 
 
 5
 In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme set forth a two-part test for reversible ineffective assistance of counsel:
 
 
 6
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or [sentence] has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or [sentence] resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 7
 466 U.S. at 687. The first prong of the Strickland test requires a showing "that counsel's representation fell below an objective standard of reasonableness." Id. at 688. A defendant's burden under this prong is a heavy one because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To satisfy the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Reasonable probability means "a probability sufficient to undermine confidence in the outcome." Id. We conclude that Fenty has failed to carry his burden under the Strickland test and therefore affirm his convictions and sentences. In so concluding, we consider separately Fenty's various allegations of deficient representation.
 
 
 8
 First, Fenty charges that his lawyer, Arthur M. Levin, failed to meet personally with Fenty in his jail cell or otherwise to prepare adequately for trial. Specifically, he contends that adequate preparation would have apprised Levin that Fenty was being threatened by his co-defendant Jerome Evans. We find this allegation insufficient to warrant reversal. The uncontested evidence reveals that Levin met with Fenty in person at the courthouse at least three times before trial, H.Tr. I 73-74, II 6, 20-22, spoke with him over the telephone seven to nine times, H.Tr. I 23-26, sent a private investigator to interview him in jail on three occasions, H.Tr. I 75, 77-78, II 14, and himself interviewed each of his witnesses for 30 minutes to an hour before they testified, H.Tr. II 35. Given this affirmative evidence of at least minimally adequate trial preparation, and Fenty's failure to show how additional preparation might have changed the outcome so as to establish prejudice, we conclude he has failed to carry his burden under Strickland on his first claim. In so concluding, we note that during none of Fenty's meetings with Levin or with the investigator, nor during the trial, did Fenty make any mention of receiving threats, despite Levin's inquiring, on more than one occasion, whether he was being threatened or had any other problem. H.Tr. I 73, II 40.[1]
 
 
 9
 Fenty next claims Levin erred in eliciting certain incriminating trial testimony from Fenty and another witness. We hold that Fenty has failed to satisfy his burden on this claim as well. Levin testified at the hearing that he elicited potentially harmful testimony because he wanted to "defuse" the effect such testimony would have if subsequently brought out by the prosecutor and to show the jury that Fenty was speaking the truth and was not attempting to conceal information. H.Tr. II 37-40. We do not see how this tactical decision amounts to ineffective assistance of counsel.
 
 
 10
 Fenty next asserts Levin "opened the door" for the prosecutor to question a witness concerning Fenty's previous involvement with illegal drugs. The record reveals, however, that even if Levin did so "open the door," no such questions were in fact asked. See Trial Tr. 744, 746-47. Thus, the error, if any, did not prejudice Fenty so as to satisfy the second Strickland prong.
 
 
 11
 Next, Fenty alleges Levin erred in not seeking to reopen evidence or to obtain a mistrial upon learning of new evidence favorable to Fenty. We disagree. Levin's decision here appears to have been a reasonable one, given the likelihood that if evidence were reopened or a new trial ordered the prosecutor would attempt to introduce other newly discovered evidence unfavorable to Fenty. See Trial Tr. 1398, 1403.[2] Further, Levin's specific decision not to seek a mistrial cannot be characterized as unreasonable when Fenty himself assured the court that he did not desire one. See Trial Tr. 1418-19; cf. United States v. Evans, 888 F.2d 891, 897 (D.C.Cir.1989) ("We refuse to hold that the District Court erred by not, on its own initiative, ignoring the express wishes of the defendant and granting a mistrial."), cert. denied sub nom. Curren v. United States, 110 S.Ct. 1325 (1990).
 
 
 12
 Finally, Fenty charges that Levin should have responded to the Government's sudden dismissal of an assault count against Fenty on the first day of trial by either moving for a severance[3] or making a Brady request for exculpatory material. We reject this claim as well. There is no reason to believe the assault dismissal constituted a ground for severance or that severance would have helped Fenty's case. Further, nothing in the record suggests the dismissal was connected with any exculpatory evidence that might have been obtained through a Brady request. In fact, at the evidentiary hearing, the prosecutor testified that the charge was dropped because the indictment of Fenty on that count had been a mistake ab initio and that there had never been any evidence implicating Fenty in an assault. See H.Tr. II 28-29.
 
 
 13
 For the preceding reasons, the judgment of the district court is
 
 
 14
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(a)
 
 
 [1]
 Fenty indicated at the hearing that had he been truly scared by the alleged threats he would have brought them to Levin's attention during the trial. H.Tr. I 54-55
 
 
 [2]
 As it was, Levin succeeded in getting one item of newly discovered evidence favorable to Fenty sent to the jury, while excluding other, prejudicial items. See Trial Tr. 1418, 1419
 
 
 [3]
 Fenty's three co-defendants were indicted on the same six counts but the assault counts against them were not dismissed